UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

               Plaintiff,

-against-

ORAZIO STANTINI,

               Defendant.
------------------------------------------------x

AMENDED
MEMORANDUM AND ORDER
93 CR 479 (ILG)

GLASSER, United States District Judge:

      On November 26, 1993, the defendant was convicted after a trial by jury of both counts of a two count indictment. Count One charged that between February 22, 1988 and May 3, 1988, the defendant and Robert Bisaccia, together with John Gotti, Salvatore Gravano, Giovanni Gambino, Giuseppe Gambino, Lorenzo Mannino and others, for the purpose of gaining entry to and maintaining and increasing their positions in the Gambino Family, an enterprise engaged in racketeering activity, conspired to murder Francesco Oliveri in violation of 18 U.S.C. § 1952B(a)(5). Count Two, re-alleging the foregoing premises, then charges that on May 3, 1988, the defendant and Robert Bisaccia, together with those named, murdered Francesco Oliveri in violation of 18 U.S.C. § 1952B(a)(1).[1]

      Represented by new counsel, Stantini moved for a new trial in April 1994, based on Fed. R. Cr. P. 33 and 28 U.S.C. § 2255 (calendar entry #66). He claimed that his Sixth Amendment right to counsel had been violated because his trial counsel, Charles Carnesi, simultaneously represented Lorenzo Mannino in the Southern District and by

---

[1] § 1952B was renumbered § 1959 in November 1988. Because the murder charged occurred in May 1988, Stantini was charged under the statute as numbered at that time.

virtue thereof labored under a conflict of interest that adversely affected his representation of Stantini in this district with respect to both plea negotiations and the defense strategy selected at trial.

Oral argument on the motion was heard on May 26, 1994 (calendar entry #75). An evidentiary hearing was not held and in a Memorandum and Order dated April 12, 1995, the Court held that (1) the motion pursuant to Rule 33 was untimely; and that (2) the submissions in support of the motion pursuant to § 2255 were facially insufficient, did not warrant a hearing, and the motion was denied. As regards the denial of the § 2255 motion, the Court held that Stantini failed to establish that Carnesi was conflicted during plea negotiations and failed to establish that Carnesi's alleged concerns about the effect of a plea of guilty by Stantini upon Mannino's case in the Southern District were realistic. In addition, the court held that Stantini failed to establish a relationship between Carnesi's representation of Mannino and an available plausible strategy for his defense which was not pursued.

On June 14, 1995, Stantini was sentenced to a term of imprisonment for 324 months to be followed by a five year period of supervised release (calendar entry #90). His sentence was driven by Count Two, the substantive Count of Murder in Aid of Racketeering, because the conspiracy to commit that crime charged in Count One was punishable by a statutory maximum sentence of ten years. On June 21, 1995, he filed a Notice of Appeal (calendar entry #93).

The simultaneous representation of Mannino and Stantini by Carnesi and the alleged conflict of interest under which Carnesi labored thereby was again argued on appeal. He also argued that the ruling on that issue by this Court without a hearing was

error, and for the first time he also argued that because the Court was aware of Carnesi's conflict of interest, the failure to inquire into it required an automatic reversal of his conviction. Finally, Stantini argued that the Court's instruction to the jury on the conspiracy to murder charge was legally wanting. The Court of Appeals affirmed his conviction and sentence in an opinion reported in 85 F.3d 9 (2d Cir. 1996), in which every claim that his conviction should be reversed was comprehensively addressed.

In a prior opinion, reported in 268 F. Supp. 2d 168, 170 (E.D.N.Y. 2003), I wrote that although the reader's familiarity with prior opinions is generally presumed, "perhaps I should also presume the unlikelihood that they will be accessed and read and that a summary historical evolution of this case" following the affirmance by the Court of Appeals would be useful. That affirmance did not terminate this case. In a real sense, it marked only the beginning of it.

On June 5, 1997, now acting *pro se*, Stantini filed a motion pursuant to 28 U.S. § 2255 reasserting and adding a new claim of Carnesi's ineffectiveness; asserting the ineffective assistance of Futerfas, his counsel on appeal; and adding a violation of the government's Brady obligation. Having taken note that his prior motion pursuant to Fed. R. Cr. P. 33 was also styled as being pursuant to 28 U.S.C. § 2255, I regarded this motion as a second and successive one pursuant to that section and transferred it to the Court of Appeals in accordance with Liriano v. United States, 95 F.3d 119 (2d Cir. 1996), for that Court to decide whether the filing of this second motion should be permitted. Stantini v. United States, 986 F. Supp. 736 (E.D.N.Y. 1997). The Court of Appeals decided to return that motion to me for further proceedings, holding that because Stantini had not yet been sentenced when I decided the first motion, this motion seeking

3

leave to file a second motion was unnecessary. Stantini v. United States, 140 F.3d 424 (2d Cir. 1998).

Upon return to this Court, and now represented by new counsel, Stantini also joined the motion of his co-defendant, Robert Bisaccia, to disqualify me pursuant to 28 U.S.C. § 455, from proceeding further on his § 2255 motion. I will refrain from relating the seven asserted claims for my disqualification beyond stating that they were denied for the reasons stated in Stantini v. United States, Nos. 97-CV-3659 (ILG), 97-CV-6683 (ILG), 2000 WL 70314, at *1-5 (E.D.N.Y. April 12, 2000). Stantini's § 2255 claims were bottomed upon his assertion of conflicts of interest that were concealed from him, the ineffective assistance he received from his trial and appellate counsel, Carnese and Futerfas, in regard to his Rule 33 motion and on appeal and the government's violation of its obligation imposed by Brady v. Maryland. I will refrain here as well, from relating the elaboration of those claims and the extensive discussion of the reasons for denying them. See id. at *7-15.

Shortly thereafter, Stantini moved for reconsideration of the denial of his § 2255 motion and in the alternative, for an order altering or amending the judgment pursuant to Fed. R. Civ. P. 59(e), or granting relief from the judgment pursuant to Rule 60(b). Concluding that his motion, whether denominated as one under Rule 59(e) or Rule 60(b), must be viewed as a second or successive motion, I transferred them to the Court of Appeals for certification as a second or successive petitions. His motion for reconsideration was denied in accordance with Local Rule 6.3. Stantini v. United States, Nos. 97-CV-3659 (ILG), 97-CV-6683 (ILG), 2000 WL 1677747 (E.D.N.Y. Sept. 18, 2000).

4

The denial of his § 2255 motion and his motion to reconsider that denial or in the alternative his motion pursuant to Fed. R. Civ. P. 59(e) or 60(b), was followed by an application to this Court for a Certificate of Appealability. He also filed motions pursuant to the Fed. R. Civ. P. 59(e) and 60(b), addressed to those denials. In yet another lengthy and comprehensive opinion, his request for a Certificate of Appealability and relief pursuant to the Fed. R. Civ. P. were denied. <u>Stantini v. United States</u>, 268 F. Supp. 2d 168 (E.D.N.Y. 2003).

Mention should also be made of a letter motion dated February 25, 2003, in which Stantini requested a new trial based upon newly discovered evidence. That motion was also denied in <u>Stantini v. United States</u>, Nos. 97-CV-3659 (ILG), 97-CV-6683 (ILG), 2003 WL 21056981 (E.D.N.Y. March 3, 2003).

Notwithstanding the proliferation of motions already filed by Stantini, yet another motion, now pending, was filed by him, seeking an order that would modify and reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). Ironically, he begins by writing that his motion "is brought on the entire record of proceedings . . . and section 2255 related petitions [which] is lengthy and complex, and a comprehensive review of those facts, or even a thorough summary of them would be voluminous, and is avoided here <u>in the interest of judicial economy</u>." Def. Memorandum of Law in Support of Motion at p.3 ("Def. Memo") (emphasis mine).

<u>The Grounds Upon Which This Motion Is Based</u>

As has been already noted, Stantini and his co-defendant Robert Bisaccia were indicted on April 29, 1993, in a two count indictment charging them in Count One with conspiracy to murder Francesco Oliveri for the purpose of maintaining or increasing

their position in a racketeering enterprise and, in Count Two they were charged with murdering Oliveri for the same purpose. That Count read as follows:

> On or about May 3, 1988, in the Eastern District of New York, the defendants, Robert Bisaccia, also known as "Cabert" and Orazio Stantini, also known as "Ozzie" together with John Gotti, Salvatore Gravano, Giovanni "John" Gambino, Giusuppe "Joe" Gambino, Lorenzo Mannino and others, for the purpose of gaining entrance into, maintaining and increasing position in the Gambino Family, an enterprise engaged in racketeering activity, murdered Francesco Oliveri.

(Title 18, United States Code, Sections 1952B(a)(1) (1984), 2 and 3551 et seq.)

At trial, the Court instructed the jury as follows:

The statute the defendants are charged with violating provides, in relevant part, as follows:

> Whoever . . . for the purpose of maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . any individual in violation of the laws of any state or the United States . . . shall be punished.

The court then instructed them that the government was obligated to prove four elements beyond a reasonable doubt, among which were:

> <u>The Second Element</u> that the government must prove beyond a reasonable doubt is that the defendant you are considering murdered Francesco Oliveri in violation of the New York Penal Law.
>
> <u>The Third Element</u> that the government must prove beyond a reasonable doubt is that the defendant you are considering acted knowingly and wilfully. An act is done knowingly if it is done voluntarily and purposely, and not because of mistake, accident, negligence or any other innocent reason. An act is done wilfully if it is done with the specific intent to do something the law forbids, that is to say, with a bad purpose either to disobey or disregard the law.

New York Penal Law § 125.25 provides that:

> A person is guilty of murder in the second degree when . . . with intent to cause the death of another person, he causes the death of such person.

The New York Penal Law was charged because § 1952B(a)(1) prohibits the murder of any individual in violation of the <u>laws of any state</u> or the United States. (Emphasis mine).

The only law of the United States addressing the murder with which Stantini was charged is 18 U.S.C. § 1111, set out below.

The Presentence Investigative Report ("PSI") prepared following the conviction of the defendants of both counts found the base offense level for both to be 43.

> The guideline for an 18 U.S.C. § 1952B(a)(1) offense is 2E1.3(a)(2) which refers to the guideline for the underlying racketeering activity. Since the underlying racketeering activity is murder, the applicable guideline is 2A1.1(a) [which] provides a base offense level of 43.

The U.S.S.G. read as follows:

Part A - <u>Offenses Against the Person</u>

1. Homicide
§ 2A1.1 <u>First Degree Murder</u>
    (a) Base Offense Level 43

Commentary

<u>Statutory Provisions</u>: 18 U.S.C. § 1111 . . . .

§ 2A1.2 <u>Second Degree Murder</u>
    (a) Base Offense Level 33

18 U.S.C. § 1111 provides in relevant part:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree.

>    Any other murder is murder in the second degree.
>
>    (b) Within the special maritime and territorial jurisdiction of the United States,
>        Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life.
>                    *   *   *   *

The same base offense level was found for Count One applying Guideline § 2A1.5(c)(1) for conspiracy to commit murder and provides that if the offense resulted in the death of the victim, apply § 2A1.1(a) which provides a base offense level of 43. Grouping Counts One and Two together pursuant to Guideline § 3D1.2(b) resulted in a total offense level of 43.

The statutory maximum term of imprisonment for the Conspiracy, Count One was 10 years.

The statutory maximum term of imprisonment for Count Two was life. Stantini was, however, given a two point adjustment for his role in the offense, reducing the total offense level to 41 and a Guideline sentencing range of 324 to 405 months.

He was sentenced to 324 months imprisonment and, as has been noted, his conviction and sentence were affirmed on appeal. The procedural history before and after the appeal has been reviewed above, perhaps too extensively for the purpose of determining this motion in which Stantini requests me to exercise my discretion under 18 U.S.C. § 3582(c)(2), based upon Amendment 591 to the U.S.S.G. which, he claims, lowered the sentencing range applicable to him.

Amendment 591 to the U.S.S.G. became effective on November 1, 2000, and was made retroactive pursuant to U.S.S.G. § 1B1.10(c). The amendment eliminated

8

Application Note 3 to the Commentary of § 1B1.2, which stated that "In many instances, it will be appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense." It provided instead that the initial selection of the "offense guideline section" be determined by the conduct charged in the indictment. Based upon the foregoing, Stantini contends that the Court having charged the jury regarding New York Penal Law § 125.25, defining murder in the second degree, applying Amendment 591 to the crime charged in the indictment required the reference to § 2A1.2, the Guideline section for second degree murder which provided a base offense level of 33 rather than a base offense level of 43 required by § 2A1.1 for first degree murder. He thus moves this Court for an order that would reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), which provides in relevant part:

> In the case of a defendant who has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant, . . . or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements by the Sentencing Commission.

## Discussion

The initial question to be addressed is whether Stantini would have been sentenced pursuant to U.S.S.G. § 2A1.2 had Amendment 591 been in effect when he was sentenced?

Put differently, would U.S.S.G. § 2A1.1 have been properly applied had the amendment been in effect when Stantini was sentenced? That question was addressed

at some length in <u>Stantini v. United States</u>, 268 F. Supp. 2d 168, 180-82 (E.D.N.Y. 2003), with which Stantini was surely familiar when he filed this motion. He cited a portion of that decision on page 15 of his Memorandum of Law, but the portion of it responsive to this question is notably absent. I include it here:

> Although a literal reading of § 1111(a) would suggest that it is the statute that should be applicable to the crime with which the defendants were charged, it was not the statute about which the jury was instructed. The cases addressing the scope of § 1111 are very few but construe it as being applicable only to murders "within the special maritime and territorial jurisdiction of the United States' by virtue of the limitation of subsection (b). In *United States v. Bin Laden*, 92 F.Supp.2d 189 (S.D.N.Y. 2000), Judge Sand wrote, at p. 204: "Section 1111(a) defines murder in the first and second degrees. Section 1111(b) specifies the penalties for each of these two types of murder, and *limits the reach of Section 1111 to murders committed '[w]ithin the special maritime and territorial jurisdiction of the United States.'* 18 U.S.C. § 1111(b)." (emphasis added). Further on, at p. 205 he wrote: "*The actual Section 1111, however, includes its own jurisdictional element, viz., 1111(b) - which limits Section 1111 as a whole to murders committed '[w]ithin the special maritime and territorial jurisdiction of the United States.'*" (emphasis added). *See also United States v. Parker*, 622 F.2d 298, 301 (8th Cir. 1980) ("It is essential to . . . the premeditated murder charges in this case that the actions constituting [that] offense took place 'within the special maritime and territorial jurisdiction of the United States.'"); *United States v. Wilson*, 565 F.Supp. 1416, 1428-29 (S.D.N.Y. 1983) (Weinfeld, J.). Francisco Oliveri was not murdered "within the special maritime and territorial jurisdiction of the United States" and, therefore, § 1111 was not applicable. For that reason and because § 1959(a) explicitly addresses "murders in violation of the laws of any State," it was necessary and entirely appropriate to invoke the Assimilative Crimes Act, 18 U.S.C. § 13. Accordingly, the jury was instructed on § 125.25 of the New York Penal Law which provides in relevant part as follows:
>
> A person is guilty of murder in the second degree when:
>
>> 1. With intent to cause the death of another person, he causes the death of such person . . . .
>
> Murder in the second degree is a Class A-1 felony and New York Penal Law § 70.00(a)(2) provides that a Class A felony is punishable by life imprisonment.

A violation of 18 U.S.C. § 1959(a)(1), of which the defendants were convicted, made punishable by death or life imprisonment, is similarly classified as a Class A felony in 18 U.S.C. 3559(a)(1).

New York Penal Law § 125.27, defining murder in the first degree, would not have been applicable to either defendant as a reading of that statute would readily reveal.

Thus, the only statute applicable to the crime of murder with which the defendants were charged and convicted was § 125.25.

The presentence report applied U.S.S.G. § 2E1.3(a)(2) which provides that in determining the base offense level for violent crimes in aid of racketeering activity (of which the defendants were convicted as charged in Count Two of the indictment) "the offense level applicable to the underlying crime or racketeering activity" should be applied. It is crucial to note that the Application Note to that Guideline provides: "if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."[FN 3] The most analogous federal offense to New York Penal Law § 125.25, the jurisdictional limitation aside, is plainly 18 U.S.C. § 1111, the only federal statute explicitly criminalizing a murder "perpetrated from a premeditated design unlawfully . . . to effect the death of any human being" and defining that as "murder in the first degree."[FN4] The underlying crime or racketeering activity being murder, U.S.S.G. § 2A1.1 captioned "First Degree Murder" with a base offense level of 43 was applied. *See United States v. Minicone*, 960 F.2d 1099, 1110-11 (2d Cir.), *cert. denied*, 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992); *United States v. Diaz*, 176 F.3d 52, 122-23 (2d Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 181, 314, 315, 145 L.Ed.2d 153 (1999).

FN3. The Application Note was in effect on November 1, 1987 and has been in effect continuously thereafter. There is thus no *ex post facto* issue.

FN4. Other statutes criminalizing murder which are not prosecutable under § 1111 but could be were it not for the jurisdictional limitation, make reference to that statute when the punishment to be imposed is "as provided in section 1111." *See, e.g.,* 18 U.S.C. §§ 115(b)(3); 351(a); 1751(a). In §§ 924(j) and 1512(a)(3)(A) the formulation is slightly different. § 924(j) provides, in relevant part, that "A person who causes the death of a person through the use of a firearm shall (1) if the killing is a murder (as defined in section 1111) be punished by death or life imprisonment . . . ." And § 1512(a)(3)(A) provides in relevant part, "The punishment for an offense under this section is in the case of a murder (as defined in section 1111) the death penalty or imprisonment for life." That Congress intended to punish

the <u>intentional</u> murder of another by death or life imprisonment is thus made manifest by the reference to § 1111 in those other statutes. (Emphasis mine).

That intention was also made manifest by U.S.S.G. Appendix A-Statutory Index which makes § 2A1.1 applicable to those offense and for others where death ensues.

Stantini's claim that "It is settled law, and a plain reading of the statute that the essential element of 'premeditation' is a requirement that must be charged in the indictment to constitute murder in the first degree" (Def. Mem. At 13) is misplaced. Premeditation is not a prerequisite of § 125.25 of the New York Penal Law which makes a person guilty of murder "when . . . with <u>intent</u> to cause the death of another person, he causes the death of that person." (Emphasis added). In charging the jury, the Court instructed that "premeditation is not a prerequisite in forming intent. Intent may be formed in seconds . . . but it must be formed before or during the commission of the act that results in murder." U.S.S.G. § 2E1.3 providing, in its Application Note, that "If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used" was properly invoked.

That 18 U.S.C. § 1111 and U.S.S.G. § 2A1.1 were properly invoked is made manifest for several other reasons. I begin with 18 U.S.C. § 13, the Assimilative Crimes Act, which in relevant part provides:

> (a) Whoever . . . is guilty of any act which, although not made punishable by any Act of Congress, would be punishable if committed . . . within the jurisdiction of the State, . . . by the laws thereof in force at the time of such act . . . shall be guilty of a <u>like offense and subject to a like punishment</u>. (Emphasis added).

12

I repeat what has already been noted, that Stantini was charged with the violation of 18 U.S.C. § 1952B(a)(1), which provided in relevant part, that

> Whoever . . . for the purpose of maintaining or increasing position in an enterprise engaged in racketeering activity murders . . . any individual in violation of the laws of any state of the United States . . . shall be punished.

It is important to know and understand the background of the events leading up to the murder of Francesco Oliveri which was described by the Court of Appeals in affirming Stantini's conviction as follows:

> [T]he murder was retaliation against Oliveri for his involvement in the murder of Giuseppe Gambino. . . John Gotti approved the murder . . . and put Gravano in charge of supervising it. The team was made up of Gravano, Joseph Gambino, Mannino, Bisaccia . . . and Stantini. After a dry run to reconnoiter the area, a day for an attempt was set. The night before this attempt, all of the participants met at the Ravenite Social Club in Manhattan to go over the details of the plan. Mannino and Joseph Gambino were responsible for securing guns and walkie talkies as well as stolen and legitimate cars for use in the murder. The attempt went ahead as planned, but the team arrived too late to confront Oliveri outside his apartment building. The participants agreed to try again one week later. . . .
>
> Gravano testified that on the day of the murder he and Mannino arrived at the scene in one car and Bisaccia, Joseph Gambino and Stantini were in another car. Stantini's role was the back-up shooter. After Oliveri was spotted outside his building, Bisaccia approached Oliveri and shot him a number of times. The participants then fled the scene.
>
> Gravano testified that after their participation in the Oliveri murder, Stantini became a 'made' member of the Gambino family . . . .

United States v. Stantini, 85 F.3d at 11-12.

The only federal statute defining murder in the first degree is 18 U.S.C. § 1111 which, as has been noted, is restricted to such murders committed within the special maritime and territorial jurisdiction of the United States, and so pursuant to the Assimilative Crimes Act, resort was had to the law of New York where such act would be punishable. The only law applicable to the Oliveri murder was New York Penal Law § 125.25. The statute defines that murder as being second degree because first degree murder is defined in § 125.27 and is limited to, for *e.g.*, the murder of specific victims such as police officers, correctional officers, a witness to a crime or by a defendant who at the time of the killing was in prison. It is important to note that §§ 125.25 and 125.27 except for the limitation to specified murder victims in the latter, read precisely the same.

> § 125.25 provides:
> A person is guilty of murder in the second degree when:
> 1. With intent to cause the death of another person, he causes the death of such person, or of a third person.
>
> § 125.27 provides:
> A person is guilty of murder in the first degree when:
> 1. With intent to cause the death of another person, he causes the death of such person, or of a third person.

Both are classified as Class A-1 felonies and punishable by life imprisonment. N.Y. Penal Law § 70.00(2)(a).

The degree assigned to each murder is thus substantively and numerically irrelevant.

<u>Is 18 U.S.C. § 1111(a), defining murder in the first degree, the "like offense and subject to a like punishment" as is the murder defined in N.Y. Penal Law § 125.25</u>?

<u>The Like Offense</u>

Referring to 18 U.S.C. § 1111 once again, murder in the first degree is defined as a murder "perpetrated by poison, lying in wait or any kind of willful, deliberate, malicious and premeditated killing." Stantini's argument, perhaps not as explicitly articulated by me above, is that since "premeditation" is not an element of § 125.25 and premeditation is, or may be argued to be, an element of murder in the first degree under § 1111, then that portion of § 1111 providing that "any other murder is murder in the second degree" and the lower corresponding second degree murder Guideline, U.S.S.G. § 2A1.2, and its base offense level of 38 rather than 43 should have been applied.

The statute defining murder in aid of racketeering, of which Stantini was convicted is a statute which is "instinct with" elements of willfulness, deliberateness and premeditation "imperfectly expressed," to borrow that elegant phrase by Judge Cardozo in another context, see <u>Wood v. Lucy, Lady Duff-Gordon</u>, 222 N.Y. 88, 91 (1917). The murder of another "for the purpose of gaining entrance to or maintaining or increasing position" in a racketeering enterprise (18 U.S.C. § 1959) of necessity bespeaks deliberate planning, premeditation and willfulness to achieve the objective of the murder, as the Court of Appeals narrative of the events leading up to the Oliveri murder chillingly describes. That description also compels the finding that the murderous team was "lying in wait" for Oliveri to exit from his apartment house. Stantini achieved his objective. He became a "made" member of the Gambino family after the murder. He

15

did gain entrance to a racketeering enterprise. The murder of Oliveri thus fits squarely into 18 U.S.C. § 1111 and <u>is</u> the "like offense" to be assimilated to § 125.25.

### Like Punishment

As has also been noted, the punishment prescribed by § 1111 is like that prescribed for § 125.25 - a maximum of life imprisonment. 18 U.S.C. § 13 thus plainly requires the Court to assimilate 18 U.S.C. § 1111 to N.Y. Penal Law § 125.25 and U.S.S.G. § 2A1.1 was properly applied.

Whether "premeditation" is, in any event, a prerequisite to the application of § 1111, is a question I need not decide.[3] A murder committed by "poison," "lying in wait," "deliberately," would, of necessity require premeditation and warrant construing "and" preceding "premeditated" in the statute to mean "or." <u>See</u>, <u>e.g.</u>, <u>United States v. Fisk</u>, 70 U.S. 445, 447 (1865) (In the construction of statutes it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe "or" as meaning "and" and again "and" as meaning "or"); <u>United States v. Gomez-Hernandez</u>, 300 F.3d 974, 978 (8th Cir. 2002); <u>Reese Bros., Inc. v.</u>

---

[3]A literal parsing of the statute may cause one to observe that its draftsmanship is wanting. The first sentence "Murder is the unlawful killing of a human being with malice aforethought" has been construed to define murder in the second degree <u>United States v. Velazquez</u>, 246 F.3d 204, 214-15 (2d Cir. 2001). "Aforethought" is synonymous with premeditated. The first clause of the second sentence defines a "malicious and premeditated killing" murder in the first degree. A murder with malice aforethought may then be categorized as either murder in the first or second degree. The second clause of the second sentence may be read as providing "Every murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . murder . . ." is murder in the first degree, no mention being made of premeditation. The listing of specific crimes in the second clause, is, I assume, to reach felony murders. Not one of those crimes requires premeditation. It may serve to clarify matters, especially when N.Y. Penal Law § 125.25 is required to be assimilated pursuant to 18 U.S.C. § 13 if the statute (§ 1111) were amended to read, simply, "every murder committed knowingly and intentionally . . . ."

16

United States, 447 F.3d 229, 235 (3rd Cir. 2006); United States v. Moore, 613 F.2d 1029, 1040 (C.A.D.C. 1980). But see United States v. Ten Cases Shawls, 4 Hunt Mer. Mag. 264 (1840).

The foregoing drives the Court to conclude once again that U.S.S.G. § 2A1.1 established the correct applicable offense guideline and base offense level that would have been required had Amendment 591 been in effect when Stantini was sentenced, and that § 3582(c)(2) is, therefore, not applicable. Stantini's sentencing range was not subsequently lowered by that Amendment and his motion for a reduction based upon that ground is denied.

Rivera v. United States, 293 F.3d 584 (2d Cir. 2002), upon which Stantini heavily relies, does not require a different result. The applicable offense guideline for a violation of the then 18 U.S.C. § 1952B was 2E1.3 which was properly referenced by the PSI. The base offense level was then properly referenced to 2E1.3(a)(2) as the offense level applicable to the underlying crime or racketeering activity, which was murder and for the reasons discussed was properly referenced to 2A1.1. Thus the distinction to be drawn between the applicable offense guideline and the base offense level that Rivera made clear was properly observed in the determination of Stantini's sentence.

The second prong of Stantini's motion, namely that the Court should exercise its discretion and reduce his sentence is also denied. Stantini explicitly recognizes in his Reply Memorandum at p. 12 in response to the government's opposition to the requested discretionary reduction of his sentence that "the government completely ignores the first step to be taken by this Court pursuant to statute . . . . This step is accomplished first by substituting the 'amended' guideline range."

17

The "first step," for the reasons as previously discussed, being legally precluded, proceeding to the second discretionary step is precluded as well, and his request that the Court take it is denied.

Fifteen years have elapsed since Stantini's trial began, and thirteen years have elapsed since he was sentenced. In that interim, eight opinions of this Court have been reported, viz., 1995 WL 228397 (E.D.N.Y. April 12, 1995); 2000 WL 703014 (E.D.N.Y. April 12, 2000); 1997 WL 803721 (E.D.N.Y. Dec. 1, 1997); 986 F. Supp. 736 (E.D.N.Y. Dec. 4, 1997); 2000 WL 1677747 (E.D.N.Y. Sept. 18, 2000); 2003 WL 21056981 (E.D.N.Y. March 3, 2003); 268 F. Supp. 2d 168 (E.D.N.Y. June 12, 2003) (Certificate of Appealability denied). This opinion marks the ninth; two opinions by the Court of Appeals have been reported in 85 F.3d 9 (2d Cir. 1996); 140 F.3d 424 (2d Cir. 1998); and in 519 U.S. 1000 (1996) cert. was denied.

In not one of Stantini's submissions which spawned that judicial response was there an assertion of innocence, that a unanimous jury convicted the wrong person who murdered Francesco Oliveri. See Friendly, Is Innocence Irrelevant? 38 U. Chi. L. Rev. 142 (1970). I paraphrase Justice O'Connor in asking whether our judicial proceedings are so unreliable that we can't give them binding effect beyond the next § 2255 petition. United States v. Frady, 456 U.S. 152, 164-65 (1982). See also Mackey v. United States, 401 U.S. 667, 691 (1971), in which Justice Harlan wrote that:

> No one, not criminal defendants, not the judicial system, not society as a whole, is benefitted by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.

18

Mr. Stantini's motion pursuant to 18 U.S.C. § 3582(c)(2) is hereby denied.

SO ORDERED.

Dated:	Brooklyn, New York
	March 26th, 2008

			_____S/_____
			I. Leo Glasser

The foregoing amended memorandum and order has been electronically filed and a copy has been mailed to:

Orazio Stantini
42452-053
Box 879
Ayers, MA 01432